

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### No. PD-0984-08

---

### NOEL RONALDO VILLARREAL, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### IN CAUSE NO. 02-06-00393-CR FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

---

**HOLCOMB, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. KELLER, P.J., did not participate. HERVEY, J., filed a concurring opinion, in which KEASLER, J., joined.**

The principal question presented in this case is whether the evidence adduced at appellant's trial was legally sufficient to support his conviction for violation of a protective order. We hold that the evidence was legally sufficient, and we affirm the judgment of the court of appeals.

On June 30, 2006, a Tarrant County grand jury returned an indictment charging appellant

with violation of a protective order under Texas Penal Code § 25.07(a)(1).[1] The indictment alleged,

---

[1] At the time of appellant's offense, Texas Penal Code § 25.07(a)(1) provided, in relevant part, that "[a] person commits an offense if, in violation of [a protective] order issued . . . under Article 17.292, Code of Criminal Procedure, . . . the person knowingly or intentionally commits family violence." Texas Penal Code § 25.07(b), in turn, provided that, "[f]or the purposes of this section: 'Family violence' [has] the meaning assigned by Chapter 71, Family Code." In addition to those Texas Penal Code sections, the following Texas Family Code sections are relevant to our discussion:

§ 71.003:

"'Family' includes individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code, individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together."

§ 71.004:

"'Family violence' means:
(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;
(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family or household toward a child of the family or household; or
(3) dating violence, as that term is defined by Section 71.0021."

§ 71.005:

"'Household' means a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other."

§ 71.006:

"'Member of a household' includes a person who previously lived in a household."

§ 71.0021:

(continued...)

in relevant part, that, on or about March 2, 2005, appellant:

> "did intentionally or knowingly in violation of an order of the Arlington Municipal Court . . . issued on February 8th, 2005, . . . commit an act of family violence, namely intentionally causing bodily injury to Shannon Love, by striking her with his hand or pushing her with his hand, and said act of family violence was intended to result in physical harm, bodily injury or assault."

The indictment also alleged, for purposes of punishment enhancement, that appellant had two prior felony convictions.

Trial under the indictment was had before a jury on appellant's plea of not guilty. At the guilt stage of trial, the State presented five witnesses and several exhibits.[2] The State's witnesses included Rosalia Maddock, Judge of the Arlington Municipal Court and a magistrate of Tarrant County; Shannon Love, the complainant; David Paden, an eyewitness to the offense; Sidney Turner, a second eyewitness to the offense; and Greg Wilkinson, an Arlington police officer.

The State's evidence, viewed in the light most favorable to the jury's verdict, and reasonable inferences therefrom, established the following: In January 2005, appellant and Love began an intimate dating relationship. They maintained separate residences, but occasionally each of them

---

[1](...continued)
"(a) 'Dating violence' means an act by an individual that is against another individual with whom that person has or has had a dating relationship and that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.
(b) For purposes of this title, 'dating relationship' means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature . . . ."

[2] Appellant presented no witnesses.

spent the night with the other at the other's residence.[3] Their relationship eventually soured. On or about February 8, 2005, appellant was arrested for committing some type of family violence against Love.[4] Shortly after appellant's arrest, he was taken before Judge Maddock. At that time, Judge Maddock, acting under Article 17.292 of the Texas Code of Criminal Procedure, issued an emergency protective order enjoining appellant, for a period of 61 days, from committing further family violence against Love and certain named members of her family. Judge Maddock gave a copy of the protective order to appellant and explained to him orally what it prohibited.[5] On March 2, 2005, just 22 days after Judge Maddock issued the protective order, appellant again committed family violence against Love, to wit: he assaulted and injured her in the parking lot of an Arlington bar.

The protective order, admitted in evidence as State's Exhibit Four, was two pages in length and entitled "Magistrate's Order for Emergency Protection – Family Violence." It stated, in relevant part, that:

> "On 2/8/05 [appellant] appeared before the undersigned Magistrate after [appellant's] arrest for an offense involving family violence and the Court at a post-arrest hearing as provided by Art. 17.292 of the Code of Criminal Procedure considered entering an Order for Emergency Protection on its own motion . . . .

> "After considering the evidence, the Court enters this Order to protect Shannon Love, who is the victim of the offense, and the following named members of the victim's family or household . . . .

---

[3] There was no evidence presented at trial suggesting that appellant was ever a member of Love's family or household.

[4] The record does not reflect the nature of the family violence that appellant committed against Love on or about February 8, 2005.

[5] The record does not reflect whether appellant asked any questions about the protective order.

"It is hereby ordered that effective immediately and for the next 61 days, [appellant] . . . is prohibited from committing family violence."

On page two of the protective order, below Judge Maddock's signature, the following definitions appeared:

"*Family violence* means an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself. *Family violence* includes physical injury that results in substantial harm to the child or the genuine threat of substantial harm from physical injury to the child, including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent, guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm.[6]

"*Family* includes individuals related by blood or marriage, individuals who are former spouses of each other, individuals who are the biological parents of the same child, without regard to marriage, and a foster child and foster parent, whether or not those individuals reside together.

"*Household* means a unit composed of persons living together in the same dwelling, whether or not they are related to each other. Member of a household includes a person who previously lived in a household." (Emphases in original.)[7]

The trial court, in its jury charge, instructed the jurors that "a person commits the offense of violation of a protective order if, in violation of an order issued under Article 17.292, Code of

---

[6] The definition of "family violence" on page two of the protective order corresponded with the definition in Texas Family Code § 71.004 as it existed before September 1, 2001. Effective September 1, 2001, the Texas Family Code definition of "family violence" included "dating violence." *See* footnote one, *supra*. It appears that whoever drafted the protective order used outdated computer software. On the bottom of each page of the protective order there appears a footer reading "famvio 09/97." That suggests that the software in question was created or last updated in September 1997.

[7] The language used in the protective order, taken as a whole, implies that appellant was a member of Love's family or household, but we suspect that that was simply a consequence of the drafter's use of outdated software. *See* footnote six, *supra*.

Criminal Procedure, he knowingly or intentionally commits family violence and the person has violated the protective order by committing an assault." The court also instructed the jurors, over appellant's objection, that "'[f]amily violence' means dating violence as hereinafter defined." The court then defined the terms "dating violence" and "dating relationship" in accordance with the definitions in Texas Family Code § 71.0021. *See* footnote one, *supra*.

The jury, after deliberating, found appellant guilty as charged in the indictment. The trial court, after hearing additional evidence, assessed appellant's punishment, enhanced by two prior felony convictions, at imprisonment for sixty years.

On direct appeal, appellant brought three points of error, arguing that: (1) the evidence adduced at trial was legally insufficient to support his conviction, (2) the evidence adduced at trial was factually insufficient to support his conviction, and (3) the trial court erred in instructing the jury that "family violence" meant "dating violence" and in defining for the jury the terms "dating violence" and "dating relationship." With respect to his evidentiary-insufficiency points, appellant noted first that, "in [this] case, the protective order . . . limit[ed] the definition of 'family violence' to actions involving family and household members."[8] Appellant then argued:

> "No rational trier of fact could have found, beyond a reasonable doubt, that [he] committed an act against a member of his family or household.[9] Consequently, no rational trier of fact could have found, beyond a reasonable doubt, that [he] violated the protective order's prohibition against committing family violence. If evidence of such a violation does exist . . . , it is so weak that the verdict seems clearly wrong or manifestly unjust, and the verdict is against the great weight and preponderance of the evidence."

With respect to his jury-charge point, appellant argued that the trial court erred because "the

---

[8] *See* footnotes six and seven, *supra*.

[9] *See* footnote three, *supra*.

protective order excluded dating violence from [its] definition of family violence, and [evidence of] dating violence, therefore, is not sufficient to support a conviction for violating the protective order's family violence prohibition."

The court of appeals overruled appellant's points of error and affirmed the trial court's judgment of conviction. *Villarreal v. State*, No. 02-06-00393-CR (Tex.App.–Fort Worth 2008) (not designated for publication). With respect to appellant's evidentiary-sufficiency points, the court of appeals first rejected his argument that the protective order limited the definition of "family violence" to actions involving family and household members and that, therefore, evidence of dating violence was insufficient to support a conviction for violating the protective order's prohibition of family violence:

> "Appellant argues that the protective order prohibited him from committing family violence as it regards members of the same household and members of a family but not family violence in terms of dating violence. Appellant is correct that the definition contained in State's Exhibit Four, the magistrate's order for emergency protection family violence, does not include the definition of family violence in terms of dating violence. The portion of the 'order' to which Appellant refers, however, is the portion appended after the order itself and after the requisite warning. It is part of neither the order nor the warning, and Appellant has directed us to no authority providing otherwise." *Id*. at 5 (footnotes omitted).

The court of appeals then explained that the State's burden at trial was to prove that appellant intentionally or knowingly, in violation of a protective order, committed an act of "family violence" as that term was defined in the Texas Family Code. *Id*. at 6-7. Finally, the court of appeals, after reviewing the evidence presented at trial and after summarizing the relevant law, stated, "Applying the appropriate standards of review, we hold that the evidence is both legally and factually sufficient to support the trial court's judgment." *Id*. at 12 (footnote omitted).

With respect to appellant's jury-charge point of error, the court of appeals explained that the

trial court did not err in instructing the jury on "dating violence" because "section 71.004 of the family code defines family violence, and subsection (3) of that section specifically includes dating violence as part of the definition of family violence." *Id*. at 13.

Appellant later filed a petition for discretionary review, asserting five grounds for review, all of which we granted. In his petition and accompanying brief, appellant reiterates the arguments that he made below: (1) the evidence adduced at trial was legally insufficient to support his conviction (grounds for review numbers one, four, and five), (2) the evidence adduced at trial was factually insufficient to support his conviction (ground for review number two), and (3) the trial court erred in instructing the jury that "family violence" meant "dating violence" and in defining for the jury the terms "dating violence" and "dating relationship" (ground for review number three).

We turn first to appellant's grounds for review arguing legal insufficiency. Consistent with the Fourteenth Amendment's guarantee of due process of law, a defendant may not be convicted and deprived of his liberty except upon proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 (1970). In assessing the "legal" sufficiency of the evidence, under the Fourteenth Amendment, to support a conviction, an appellate court must consider all of the record evidence in the light most favorable to the verdict, and must determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In that analysis, the elements of the offense are defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

describes the particular offense for which the defendant was tried." *Ibid*.

The hypothetically correct jury charge for this case would state the elements of the charged offense as follows: (1) appellant (2) in violation of an order issued on February 8, 2005, by the Arlington Municipal Court under Article 17.292, Code of Criminal Procedure (3) at a proceeding that appellant attended[10] (4) knowingly or intentionally (5) caused bodily injury to Shannon Love by striking her with his hand or pushing her with his hand (6) and said act was intended to result in physical harm, bodily injury, or assault. Appellant argues that, given the evidence adduced at his trial, no rational jury could have found him guilty of the second element beyond a reasonable doubt. Appellant does not challenge the sufficiency of the evidence to support the other elements. He points out correctly that the definition of "family violence" on page two of Judge Maddock's protective order is limited to acts involving members of a family or household and does not include dating violence. He also points out correctly that the evidence at trial showed that he and Love were in a dating relationship, as that term is defined in the Texas Family Code, and did not show that he was a member of Love's family or household.

We are not persuaded by appellant's argument. A rational jury, reading Judge Maddock's protective order as a whole, and considering it in the context of all the other evidence as well as the trial court's instructions regarding the meaning of "family violence,"[11] could have found the following facts beyond a reasonable doubt: (1) on or about February 8, 2005, appellant was arrested in Tarrant County for some type of family violence against his girlfriend, Shannon Love; (2) on that

---

[10] *See Harvey v. State*, 78 S.W.3d 368, 372-73 (Tex.Crim.App. 2002).

[11] The trial court's instructions were not erroneous, despite appellant's claim to the contrary. *See* discussion, *infra*.

same date, Judge Maddock, of the Arlington Municipal Court, at a hearing that appellant attended, issued a protective order under Article 17.292 naming appellant as the subject and naming Love and her family as the protected parties; (3) Judge Maddock, on page one of the order, explicitly prohibited appellant from committing further "family violence" against Love or her family; and (4) despite the deficient definition of "family violence" on page two of the order, any reasonable person in appellant's position reading the protective order would have understood that it prohibited him from committing violent conduct against Love or her family. From those facts, a rational jury could have further found, beyond a reasonable doubt, that appellant's violent conduct against Love on March 2, 2005, was "in violation of" the protective order.

Although we agree with the court of appeals that the evidence adduced at appellant's trial was legally sufficient despite the definition of "family violence" contained on page two of the protective order, we do not agree with the reasoning employed by the court of appeals. The court of appeals dismissed appellant's argument concerning the deficient definition simply by holding that that definition was not part of the protective order, whereas we conclude that the proper analysis is to determine whether a rational jury, despite the deficient definition, could conclude beyond a reasonable doubt that appellant's assaultive conduct on March 2, 2005, was in violation of the order.

We overrule grounds for review numbers one, four, and five.

We turn next to appellant's ground for review arguing factual insufficiency. Our state constitution allows the courts of appeals (and this Court in direct appeal of capital murder cases), upon request, to reverse a judgment of conviction and remand for a new trial when the evidence, although legally sufficient, is nevertheless too weak to withstand scrutiny or preponderates greatly against the finding of guilt. *Watson v. State*, 204 S.W.3d 404, 414 (Tex.Crim.App. 2006). Once a

court of appeals has determined such a claim of "factual" insufficiency, this Court may not conduct a de novo review of the lower court's determination. *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). Our review is limited to determining whether the lower court applied the correct standard of review and considered all of the relevant evidence. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex.Crim.App. 2008). In the instant case, appellant asks us, in effect, to conduct a de novo review of the court of appeals's determination of his factual-insufficiency claim. We cannot do that. We therefore dismiss ground for review number two as improvidently granted.

We turn finally to appellant's ground for review arguing jury-charge error. As we noted previously, appellant complains that the trial court erred in instructing the jury, over his objection, that "family violence" meant "dating violence" and in defining for the jury the terms "dating violence" and "dating relationship." *See* footnote one, *supra*.

A trial court is statutorily obligated to instruct the jury on the law applicable to the case. Tex. Code Crim. Proc. art. 36.14. As Professors Dix and Dawson have explained, that statutory obligation "requires that each statutory definition that affects the meaning of an element of the offense must be communicated to the jury." G. Dix & R. Dawson, *Texas Practice: Criminal Practice and Procedure* § 36.11 at 562 (2nd ed. 2001). In the instant case, the grand jury, through its indictment, charged appellant with the offense of violation of a protective order, one element of which was the commission of "family violence" as that term was defined by the Texas Family Code. Because the Family Code definitions of "dating violence" and "dating relationship" affected the meaning of the "family violence" element of the offense, the trial court did not err in instructing the jury on those definitions. We overrule ground for review number three.

We affirm the judgment of the court of appeals.

DELIVERED APRIL 29, 2009

PUBLISH